United States v. Poulin, Ms. Christensen. Good morning, Your Honors. May it please the Court, Counsel. My name is Joanna Christensen, and I represent the appellant, Matthew Poulin, in this case. Mr. Poulin is before this Court for a second time after the resentencing on remand from this Court. I'm also before this Court on, I don't even know how many times, about supervised release conditions, and that's what this case is about as well. The government and I are in agreement on many of the points. The recent case, Purim, addresses the government's waiver issue. It also addresses our claim that there should be a limited remand, or a request that there should be a limited remand rather than a full remand for resentencing. That was the remedy in Purim, I assume because the case had already been back for resentencing once. Mr. Poulin has requested that remedy in this case to deal with the conditions that he specifically is concerned about, and also the conditions that Thompson and Kappas were concerned about, the 13th standard conditions. My reading of the government's brief, and the government can certainly correct me, is that the government has agreed that the 13 conditions, save the alcohol ban, should go back for reconsideration by the District Court, because they are based on language that was struck down in this Court's various opinions since January. The remaining three issues that really were at contention are the alcohol ban, the overlapping treatment provisions, and the no contact provision with minors. The alcohol ban was primarily based on one statement in a psychological report of Mr. Poulin that he dealt with stress by drinking alcohol and taking prescription medication, and that in 2006, which is now nearly 10 years ago, he was diagnosed with an alcohol dependency. What the Court didn't acknowledge is that, again, this was 10 years ago, Mr. Poulin was 21 years old and he was going through a divorce, and a lot has changed since then. He had not had a problem with alcohol since 2006 and receiving treatment for that, showing that he is amenable to treatment for alcohol abuse. He also, the psychologist indicated that there was no indication that he misused alcohol or misused prescription drugs in that he dealt with stress the way a lot of people deal with stress. They may drink and they may use prescription medication to deal with anxiety. The overlapping treatment provisions is a concept that came from Siegel, which acknowledges the fact that to have three different types of treatment for Mr. Poulin, psychological treatment, alcohol and substance abuse treatment, and sex offender treatment, is a very difficult situation to put him in when he also needs to work. He was working continuously prior to his arrest in this case and only can assume he will continue to work. It would be very difficult to participate in these three types of treatment while he is working. It's also unclear how far he would have to travel for each one of these treatments and if they overlap. The pre-sentence report says that when the defendant was interviewed during a clinical interview while at the Bureau of Prisons in the Metropolitan Correctional Center, he indicated that he handled stress by consuming alcohol and taking prescription medication. So when did he have this interview? That was during the pendency of this case. I believe it was in 2013. So that's not so long ago. That's not just the youthful indiscretion. Right, but the psychologist in that report also said that there was no indication he was misusing those substances. That what? That he was misusing the substances, that he was drinking alcohol to excess. Well, if you drink alcohol to alleviate stress, you're drinking it in quantity. And isn't that bad with this child molestation that alcohol, you know, alcohol tears down to some extent people's self-control, ability to avoid questionable behavior? Well, I have two answers. I don't think that all drinking of alcohol to relieve stress is problem drinking. I think there are probably people in this room who might drink to relieve stress without it being a problem. And if it does lead to... I don't think you're right about that. I don't think... It's one thing, people drink, you know, they like the taste or they like, you know, makes them feel more better or something like that. But actually to be under stress and then drinking to relieve your stress, I think that's quite dangerous. I would agree if that's your only way of coping with stress. Yes. Your only way? The other way is the prescription medication? That makes a great combination prediction. I agree, Your Honor. I don't want to point any fingers in the courtroom, but I'm saying that it certainly may not. Good. Including myself. Because I thought we were about to have a survey of everybody in the courtroom. You know, we'll just talk in generalities, but I do... We can agree to disagree. That may be something for his counselor to determine, whether he is, in fact, drinking... Well, he can always ask for a modification. That's true. That's true. And I think that's certainly true of all these cases, that modification is possible, particularly when we're talking about the treatment provisions. That if it is too burdensome, he is from a small town, which is within the area of the Quad Cities, and I'm not sure how close treatment is for him. If it is very close and it can be done maybe all in the same treatment provider, then that would be workable. But without any findings about how that, it's kind of hard for us on appeal. The second part of your original question was whether this leads him to view child pornography. Mr. Pullen was not a molester. He was simply downloading and viewing child pornography. Right. Okay. I'm sorry about that. So there is that distinction. That moves to the no-contact order as well, is that he was not diagnosed with pedophilia. He had never had a contact offense. In fact, he had no prior criminal history whatsoever. So the no-contact offense should be more narrowly tailored to Mr. Pullen's situation. I think most importantly, the no-contact provision eliminates his home as a place for him to live. This is the stepsister's child. I believe it is the stepsister. It is the stepsister, yes. I think his mother's child. It's a little unclear from the record if half-sister or stepsister, but she does live in the home. Of course, now she's older than she was. She was seven at the time the presentence report was written. And there was no indication from anybody living in that home that they thought Mr. Pullen was a danger. One of the situations we find ourselves is when people come out of prison, they need a stable home to be at. And this seemed like a stable home for him to be at, and I think he is welcome to return there. So he needs to be able to find that home without this provision that the probation officer constantly has to be informing people who might be in contact with him at that home. Like I said, the government has essentially agreed if the waiver situation is no longer because of PIRM, that the case should go back to resentencing. The district court can have a chance to address these issues again at resentencing, perhaps narrowly tailor them, perhaps because Mr. Pullen is going to be released in the near future, hold off on some of these until he's released from prison, perhaps order a substance abuse evaluation at that time, a sex offender evaluation, because he is going through treatment right now. It's possible that those provisions will no longer be necessary when he is released. So unless the court has further questions, I will reserve the remainder of my time. Mr. Walters. Good morning, Your Honors, and may it please the court. My name is Greg Walters, and I represent the United States in this case. If I could just briefly address a statement by... Did the judge read the standard conditions in the sentencing hearing, or did he just say he was imposing them? He just stated he was imposing them. Well, that's very improper. Your Honor, I believe it's clear that it's certainly improper in light of Thompson. If I could bring this court back to the time frame, as we have somewhat of an intervening decision by the district court here that I think it followed this court's decision in Goodman or other cases. It was months before the Thompson-Kappas line of cases that really addressed standard conditions and making it clear that those have to be announced. So, yes, that was improper. And I'm sure Judge Mim would tell you that that's improper in light of this court's opinions at King. Well, shouldn't he do it over then? Well, I think if I could address what I was going to address is the waiver. Well, I want to know what's in or what's out. I mean, are you saying that this needs to be remanded because there were a lot, you know, before we got your 28J letter. It said that because now the ones that you claim were waived, they can now be reconsidered. So, like, what's in? What are we disputing in terms of the condition that you say doesn't need to go back to be redone? Your Honor, I would say what we are disputing is the alcohol ban. Is that the only thing left? The no contact provision. Those, the ones she identified, so you're in agreement. And then the three treatment conditions. Okay, so that's it. Okay. Where I would disagree respectfully with counsel, our recognition of Perham wasn't necessarily a recognition that every condition she challenges is vague. Some may not be supported by findings when I'm talking about the standard conditions. But this court hasn't held that every one of those 13 standard conditions is vague. Many of them are. And so what we're saying with regard to the standard conditions is since it does have to go back in light of Thompson and Kappas, and now Perham saying there can't be waiver under this circumstance, that even those conditions that aren't vague, the court will have a chance to make appropriate findings, maybe more tailor them to wording that this court has used, and then announce them as Judge Posner noted was improperly done pre-Thompson and Kappas. So if I could then address. Go ahead. Thank you, Your Honor. Address the conditions that we are still asking the court to uphold. It may sound somewhat wasting, trying to waste the court's time by addressing the alcohol prohibition since the standard conditions are going back. But I think it's important that that condition remain, that it doesn't have to be on the table going back. Because as the court noted, Judge Posner, when you were reading the psychiatric examination, the defendant stated that he deals with stress by using alcohol and prescription pills. An alcohol dependency diagnosis in 2006, even with treatment, my understanding of alcohol dependency is another term of alcoholism, which is not curable. It's controllable, but it's not curable. And then also I'd like to point out that counsel or the defense in their brief question, Judge Mims' finding that his use of alcohol could lead to other offenses such as viewing child pornography. What I would like to point out is that Dr. Niebring found that at the time of the alleged offense, the diagnostic impression was, quote, alcohol abuse. And then he stated in his sanity examination, quote, his judgment may have also been adversely impacted at that time due to the use of alcohol. So whether we're looking at history and characteristics that are offense specific or history and characteristics based on his alcohol dependency, under either circumstance, that alcohol treatment condition is appropriate, which leads to our next point concerning the three different conditions, Your Honor. I recognize, we recognize it in Siegel, this court question, United States versus Siegel, this court question the propriety of imposing three separate conditions. But I think we have before us treatment conditions. I think we have before us a unique defendant. What on earth is sex offender treatment? Your Honor, sex offender treatment would be counseling. Counseling? With a clinician. That's treatment. Clinical psychologist. Pardon? What else? Well, there's group therapy involved at times with these. Is there any evidence that there's any slightest effect of such stuff on people's sexual, you know, impulses? I think we're dealing with a difficult area of empirical analysis, Your Honor, because we don't know. Or you would find empirical data on both sides of this as to what the effectiveness of the treatment, to what danger, if any, a possessor and user of child pornography poses as far as a contact offense. We have, there's data on both sides of that. I'm not an expert to say that empirically that treatment works. What I can say is that we have offenders. But it's always imposed. I don't know. I think, though, when we're. . . It sounds like, you know, in the olden days they thought, well, you could convert homosexuals into heterosexuals by talking to them and so on. All that's been dropped. And I don't know if there's any evidence at all that you can alter people's sexual desires. It may not be to alter the desires, Your Honor, but in the same way as with alcoholism, a manner and means of controlling those desires in a more effective approach than viewing and masturbating to child pornography. Well, you can forbid the child pornography. You can forbid people to drink. But that's not what this sex offender treatment is. It's some sort of psychological, or I don't know what it is. Well, yes, it would be a psychological.  I think that. . . Again, I don't think that we have a desire to give up on a defendant and leave him to his own devices, that his sexual fantasies would remain contained to his imagination, Your Honor, particularly dealing with children. And so what we have is a district judge who used his judgment to impose that condition, and parenthetically, but importantly, explicitly from the defendant stating, quote, no objection to that condition. No, no. Look, I don't care about having a condition. Judge, I'm sorry. But is the Justice Department interested in the efficacy of these conditions, or they're just imposed because, you know, there's a list in the Code of Federal Regulations? I think the Justice Department would be interested in the efficacy of a lot of what's done or not done. But to say that everything has been studied or determined by the Justice Department, I would be lying to the court. I am unaware of any study by the Justice Department of the efficacy of sex offender treatment, to frankly answer the court. That's fine. But so, and I'll move on to the last condition, the other challenge condition. But what I would like to state is there is a waiver issue still with regard to the three treatment conditions, not based on not having been raised before, but when a defendant is explicitly asked in sentencing, do you have an objection to this condition, and they state no. I believe that's waiver. That's not just plein air. And even if it were plein air, in spite of the comments in Siegel about imposing a number of treatment conditions and the problems that could occur, there is yet to be any holding stating that that would be improper. And the facts of this case are such that you do have a unique defendant that suffers from mental health issues, that does have, for lack of a better term, a sexual deviancy issue, and then does have a history of alcohol abuse. So with that, I'd like to turn to what I think is really the gravamen of our appeal, and it's the no contact condition. First, the defendant's argument in his brief was really pretty limited. It was almost like a Cunningham-type argument that Judge Mim didn't address his principal arguments, were that he's not a pedophile with a history of no contact with any minor, and secondly, that it restricts him from contact with his stepsister or half-sister. And I agree, it's not clear from the record. I think after rereading it, it may be a half-sister instead of a stepsister. First, to address the lack of diagnosis of pedophilia and no contact, that rule-out diagnosis by Dr. Niebring is far from a ringing endorsement that the defendant is not a pedophile. What Dr. Niebring stated was there was insufficient evidence based on, one, the age of the children, because the defendant reported that he had a sexual interest in pubescent minors, and two, the amount of time that he had that interest, which requires at least six months under a pedophilia diagnosis. But what we do know is actually this defendant, based on his own search terms on his computer, had an interest in other than teenage pornography. When you use a search term such as, quote, pre-teen, you are not looking for pubescent child pornography, and his collection would show that that wasn't the case. So even though there was a, quote, rule-out diagnosis, I think the proper reading of that diagnosis is that it was actually something not considered or actually reached by Dr. Niebring. And Judge Mint explicitly considered the fact that there was a rule-out diagnosis. And what we have, even in the face of that, is a concern by an experienced district judge that this defendant, who, again, we acknowledge there is no evidence of him acting out on a young female physically, but a concern that, again, his sexualized fantasies would remain contained to just his imagination. And I think within the wide discretion given to the judge that he can impose this condition. And notably, he even considered the defendant's statement or concern about not having unsupervised contact with his stepsister or half-sister. And the court even brought this up. He said, I see an issue with that. If you get out and that is where he is going to live, within his mother's home, the judge said he was willing to reconsider that condition. And I think that shows wisdom on the part of a judge. And I think just ultimately that the court's imposition of this condition under a circumstance in which the defendant is known to have a sexual attraction to children and have gratification through physically manipulating or masturbating himself to those videos, that the judge is rightly concerned. How old will he be when he is released from prison? When I calculated, I believe he is going to be in his early 30s. And how old will the stepsister or half-sister be? The stepsister or half-sister will be, I believe, between 10 and 11 years old. And counsel can correct me if I'm wrong. I believe 10. If he gets out two years from now with good time credit. She'd still be a child. She'll still be 10, Your Honor. So, aside from our concession, our Rule 28J letter. Does he have a sexual interest in prepubescent girls? He does, and I would suggest that that is shown by the search term. If you look at Paragraph 8 of the PSR, I think it's Paragraph 8. One of the search terms he used on his computer is, quote, preteen. And then if we look at the videos that are described in the PSR, especially the one in Paragraph 13A, the compilation video of Tara that lasts for 35 minutes, that's an eight-year-old child being anally raped over and over through different means. And so I would say, yes, it's not just confined to pubescent. And the defendant stated in his change of plea hearing that he downloaded teenage pornography. Forensically, it shows that it went to preteens and prepubescence. And so we have a range basically from the ages of five up to the defendant stated 18, which obviously that would be legal. So absent further questions from the court, and based on our concessions, we're asking that the court would otherwise affirm those conditions dealing with the alcohol prohibition, the treatment, and then the no-contact provision. Okay, thank you, Mr. Williams. Thank you, Your Honors. Ms. Christensen, do you have anything further? Thank you, Your Honor. I do need to correct myself. I get in the habit of saying 13 standard conditions, and actually there are only 10 that are at issue here, that the government's conceded, I'm sorry. The three that are left are the alcohol ban and then the contact with law enforcement and not being an informer. Those we have not contested. I think part of our concern with the treatment is exactly, as you pointed out, that sex offender treatment is essentially mental health treatment focused on sex offense behavior. Most people who are convicted go through some sort of mental health treatment either in prison or out of prison. It's essentially the same thing, except it's focused on their criminal behavior, which is viewing, downloading child pornography. So there is an overlap. From a treatment provider's perspective, I can't imagine that someone who's providing treatment to sex offenders wouldn't also consider themselves providing treatment, mental health treatment. And if alcohol does play a part or prescription drugs does play a part, it also becomes drug treatment. It becomes an overarching thing. Three separate provisions are not necessary. I believe the court did not address the 3553A factors and 3583D factors about those type of issues. I don't quite understand how sexual tastes fall in the category of mental health problems. Well, it's probably... People don't say anymore that homosexuality is a psychiatric condition. Right. Pedophilia is still a psychiatric condition. It's diagnosed or... There are lots of strange sexual, to the average person, strange sexual tastes. I would agree with that. I think if it's in the DSM, the Diagnostic Statistical Manual, and homosexuality used to be in the DSM and has been removed, maybe there will come a time in our society where pedophilia is removed. I doubt it because there are victims. There are non-consenting victims. That has nothing to do with the case. There are non-consenting victims of murder. You don't say every murder is nuts. Well, I think that there are people that would say that in order to take someone's life deliberately, you are not completely mentally capable. I think that that can be a mental disease in itself. That sexual tastes, whether they are destructive or weird or what have you, are products of mental illness. All I can say is that... As opposed to something in the brain. It could very well be something in the brain. I think our problem globally with these issues is we don't know a lot about how this works and how treatment works. As far as the no contact... What's the evidence that any of these treatments have any effect? There is some empirical studies that say the government cited them in their brief. The Sentencing Commission has done some that say that sex offender treatment for what we would call non-touchers, for people who view child pornography, is important to keep them from re-offending. There's empirical studies on the other side that sex offender treatment is not effective and there are some studies that suggest some sort of biological treatment, castration is effective, that's also been debunked. I think the problem is that nobody has an agreement about how to treat this offense that is a criminal offense, that does have victims. My comments about the no contact provision is that when we start talking about what sex offenders are interested in, what their fantasies are, my head goes that's thought police. That is getting into these narrow search terms that might have been something that he was interested in that day. I don't know how that's protecting the public if we say, well, it's only this group or it's only this group. There are people, as you say, that have many weird interests and I can't envision a provision that says you can't have contact with Asian girls ages 13 to 14. The thought police comes down and kind of we're getting into a realm that I don't believe we're capable of understanding totally. So that I understand you, Ms. Christensen, you would say there's no basis in this record to impose any no contact provision? I think I've seen stronger basis in other cases. I'm hesitant to say that having no no contact provision would be appropriate in this case. And the reason I say that is that I doubt that probation officers would be very happy with me because they have to supervise Mr. Poulin and others. So you would want a more tailored one in this case? I think more tailored. I think with input from people who perhaps are not lawyers, his treatment providers really who get to know him and evaluate him and see, A, if he still has these issues after sex offender treatment in prison because he has been attending the entire time. I believe he's at FCI Elkton, which is a specialized prison. They have a specialized unit for sex offenders. If he still needs that kind of oversight, it's similar with alcoholics is that at the beginning of treatment you may need more structured treatment. As you progress through treatment, you may not need that structure. That's completely different. I think the model is the same. Because if you don't drink, you don't have alcoholism, right? I think you always have alcoholism, but if you don't drink, you're not drunk. Well, it doesn't matter if you don't drink. Right. That's the cure. Right.  Well, I think if you don't... No. Well, I don't think... It doesn't work with sexual stuff unless you start castrating people. And I'm certainly not suggesting that. It's not favored anymore. Well, Ms. Christian, if there was a hearing where some expert testimony was provided and you speak in your dialogue with Judge Posner about evidence on both sides, and there was an indication from either the treatment counselor or somebody that you or the government presented that a no-contact is a precautionary method, would a district judge, in this case Judge Mim, would that be enough of a basis to put in a no-contact? I think so. So we're going to send this back, aside from the other reasons. How many other there are. We're going to send this back to have someone suggest that in this case this individual might, one way or the other, benefit from a no-contact. I think that's possible. What I was envisioning, because he's relatively close to release, is having Judge Mim perhaps propose an evaluation upon release to determine whether those provisions are necessary, and then at that hearing have someone who recently has met with him. I don't see how a judge could be faulted who said he should not be allowed to live in the same house with a 10-year-old girl. I'm not sure Judge Mim actually said that specifically. I think that might be the effect of the provision. But I think he was willing to reconsider if Mr. Poulin didn't live there. He spends years in prison, a couple of years in prison, then he comes out, then he's with this little girl. That doesn't sound safe. There are plenty of places he can live without living with a little girl in the house. I certainly agree that there would be concerns. I think most people would be concerned. But if we're rehabilitating people in prison... Look, I don't buy that rehabilitation. I don't see any evidence that talking to people is going to change their sexual desires. I'd have to agree with the government. Not change, but perhaps control. I think that's what we have right now with the psychological science that's out there. Well, he didn't control it before. He knew that this downloading and so on of pornography was illegal. Why do you think he's going to change? Because some people talked to him in a prison, or after the prison, and they say he shouldn't do this. I think they teach him to change his thought process, to control his thought process. They don't teach people to change their thought process. Well, I think that psychologists believe that that's what they do. So, unless the court has further questions, I thank you. Okay, thank you, Ms. Christensen and Mr. Walters. Next case for argument is...